UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
--------------------------------------------------------------------X
Ventus Management Inc., d/b/a Neighbors Market,

**COMPLAINT**

            Plaintiff,                           **Case No.**

        -against-

United States of America

         Defendant
--------------------------------------------------------------------X

1

The plaintiff Ventus Management Inc. d/b/a/ Neighbors Market (the "Store"), by and through their attorneys, SPODEK LAW GROUP, P.C., respectfully allege as follows:

## NATURE OF THE CLAIM

1.      This is an action seeking an administrative stay pursuant to 7 C.F.R. § 279.10(d) and judicial review of an order from the Supplemental Nutrition Assistance Program ("SNAP") imposed by the Food and Nutrition Services ("FNS") disqualifying Plaintiffs for six-months from participating in the food stamp program based on alleged violations of regulations prohibiting the sale of ineligible goods for purchase by SNAP coupons, and pursuant to 7 U.S.C. § 2023(a)(13), asserting claims for a trial de novo of a final agency decision by the United States Department of Agriculture (hereinafter, the "Agency" or the "Department").

2.      Jurisdiction of this Court is invoked pursuant to 7 U.S.C. §§ 2011, et seq. and, more specifically, 7 U.S.C. § 2023(13).

3.      The Store, which is the subject of the Order and Final Agency Decision (hereinafter, the "Order" or "FAD") of the United States Department of Agriculture, is located in the City of St. Louis, State of Missouri, which is within the jurisdiction of the United States District Court for the Eastern District of Missouri. *See*, Order/Final Agency Determination, annexed hereto as **Exhibit A.**

4.      This Court is empowered to review the Order pursuant to 7 U.S.C. § 2023.

5.      Plaintiffs received the Order from Defendant on February 19, 2025.

6.      Applicable federal regulations require an aggrieved store owner to file in the requisite district court no more than thirty (30) days after receiving the FAD.

7.      The filing date of this complaint is not more than thirty (30) days from February

19, 2025. As such, this Complaint is timely.

## THE PARTIES

8.     Plaintiff Ventus Management Inc., doing business as Neighbors Market is a corporation duly formed and organized pursuant to the laws of the State of Missouri, and operates as a grocery store with a principal place of business located at 9995 West Florissant Ave., in St. Louis, Missouri.

9.     Defendant United States of America (the "Defendant") is formed, maintains and controls the United States Department of Agriculture ("USDA" or the "Department"), of which the Food and Nutrition Service is a subsidiary. The Food and Nutrition Service of the United States Department of Agriculture administers the Supplemental Nutrition Assistance Program by, in part, issuing Electronic Benefits Transfer (EBT) cards to eligible users who purchase eligible food items from retailers that the FNS authorizes as qualified SNAP participants. The retailer is reimbursed for each eligible EBT purchase.

## BACKGROUND
## FACTS

10.     At all relevant times, the Store was an authorized participant in the Supplemental Nutrition and Assistance Program, administered by the USDA's Food and Nutrition Services.

11.     Between May 25, 2023 through August 2, 2023, the USDA conducted an undercover investigation of the Store to ascertain the its compliance with Federal SNAP rules and regulations.

12.     After an investigation into the Store's compliance efforts during said period, on or about September 26, 2023 the Agency sent a charge letter to Plaintiff asserting violations of

SNAP regulations, pursuant to 7 CFR 278.6(e)(5).

13.    On or about October 10, 2023 Plaintiffs through prior counsel, replied to the Charge Letter….

14.    On or about November 2, 2023, Defendant issued a determination, disqualifying Plaintiffs from participation as an eligible SNAP retailer for a period of six-months as a result of the Agency's investigator allegedly purchasing minor goods which are ineligible for payment through the redemption of SNAP coupons and EBT cards.

15.    On or about November 2, 2023 Plaintiff requested administrative review of the initial Agency determination. Acting through prior counsel, Plaintiff explained that they had taken measures to ensure total compliance with all SNAP rules and regulations, and that Plaintiff have never been issued any violations by the Agency. Additionally, the Store provided Defendant with a plethora of documents demonstrating that Plaintiff mandated rigorous SNAP training by all its employees, and provided evidence that the Store's employees were trained in SNAP rules and regulations. Plaintiff further explained that this was not the result of carelessness or poor supervision by ownership or management. Despite Plaintiff best efforts to train and oversee its employees, mistakes do happen.

16.    On or about February 19, 2025 the Agency rendered its final decision, disqualifying the Store from participation in SNAP for six-months, and denied Plaintiffs' request for a civil monetary penalty. See, Ex. A.

17.    The Department found as a fact that the items purchased by the FNS investigator during the violating transactions included a variety of items best described as common non-food items. See, Ex. A.

18.     On each occasion that the investigator allegedly used an EBT card in a "sting" purchase of a common ineligible non-food items. *See*, Ex. A.

19.     Neither prior to nor after the first such "sting" purchase, did the FNS send a warning letter as contemplated by 7 C.F.R. § 278.6(e)(7).

20.     A substantial amount of Plaintiffs' business revenue comes directly from their acceptance of SNAP/EBT cards. Each month, Plaintiffs average approximately $25,000.00 worth of SNAP transactions, which comprises approximately a significant percentage of the Store's overall monthly revenue.

21.     A six-month suspension would likely cause great financial harm to the Store, likely forcing Plaintiff to reduce staff due to decreased revenue.

22.     Additionally, pursuant to 7 C.F.R. § 278.6(d), FNS in determining the appropriate penalty must consider (1) The nature and scope of the violations committed by personnel of the firm, (2) Any prior action taken by FNS to warn the firm about the possibility that violations are occurring, and (3) Any other evidence that shows the firm's intent to violate the regulations.

23.     At no time between the Store's inception and the date of the disqualification decision did the FNS Regional Office consider the nature and scope of the violations, as required by 7 C.F.R. § 278.6(d)(1). Here, Defendant fails to even discuss the nature and scope of the violations, and instead in conclusory fashion, states that because the violations occurred, there was no proverbial 'wiggle room' as to the sanction imposed, which is not true. Moreover, the ineligible items allegedly sold by the Store are 'food-adjacent' items, such as plastic cutlery, which should be considered some of the lowest level violation possible.

24.     At no time between the Store's inception and the date of the disqualification

decision did the FNS Regional Office consider issuing a warning letter or any other prior efforts to warn, as required by 7 C.F.R. § 278.6(d)(2). In fact, in direct contradiction of the language in (d)(2), the FAD plainly fails to take into account whether the Store was warned, or the lack thereof, in reaching its final determination. This decision conflicts with the Agency's own regulations, which require pre-disqualification consideration of prior efforts to warn or lack thereof, as required by 7 C.F.R. § 278.6(d)(2).

25.    Plaintiff has never been warned and Plaintiffs have never been denied SNAP payments or reimbursement based on any SNAP program violation.

26.    Plaintiff is not aware, nor has it has ever been notified or warned, of any irregularities in their compliance with SNAP laws or regulations that might warrant his store being targeted for a surreptitious investigation of his compliance.

27.    At no point in time did the Final Agency Decision ever discuss or consider the intent of the Store to violate the regulations, as required by 7 C.F.R. § 278.6(d)(3). In fact, the Final Agency Decision explicitly rejected the notion that the intent of the Store to violate SNAP rules and regulations could factor into determining an appropriate penalty for the Store, and instead held that firm's prior record or lack of any previous violations *cannot* constitute a ground for mitigating the allegations against them.

28.    Plaintiff had trained each of their employees not to permit any customer to improperly/unlawfully attempt to traffic SNAP benefits.

29.    Each of the investigator's alleged EBT purchases occurred despite Plaintiff's explicit instructions prohibiting any unlawful acts by Plaintiff's employees. Moreover, not only did other employees of the Store refuse to sell ineligible items to the Agency's investigator, but

Plaintiff's employees further refused to engage in SNAP benefit trafficking, as the Agency attempted to induce during its investigation of Plaintiff, evincing that they are and had been trained in SNAP rules and regulations.

30.    Moreover, Defendant made no specific findings as to carelessness or lack of supervision by Plaintiff, as required by 7 C.F.R. § 278.6(e)(5). Despite Plaintiffs providing the Agency with documentation demonstrating that Plaintiffs have an effective compliance and training program, the FAD uses circular logic to arrive at its desired decision. The FAD plainly states that simply because the violations occurred, Store management must have been careless or exercised poor supervision over its employees. This reasoning abdicates any responsibility of the Agency to make specific findings of poor supervision or carelessness by Store ownership or management.

31.    The six-month disqualification of the Store would also likely harm the community because it is an integral part of the community shopping environment.

32.    Enforcement of the six-month period of disqualification from SNAP will wrongfully force Plaintiff to sustain immediate and irreparable injury, loss and damage by directly depriving Plaintiff of substantial portion of its gross revenues, as well as an unknown amount of additional revenue from by eligible SNAP participants who are drawn to the store by the availability of food bought with EBTs, and who almost invariably make simultaneous purchases of non-food products with cash or credit cards. Moreover, it will deprive Plaintiff of approximately tens of thousands of dollars and a large percentage of its monthly revenue, which all taken together, constitutes substantial harm. Additionally, substantial and irreparable harm will come to the Store's community and customer base, as the Store is the only authorized SNAP

retailer in the surrounding area which operates 24 hours a day, 7 days a week. Without the Store retaining its ability to process SNAP transactions, the community will be unable to obtain SNAP products after approximately 10 p.m., when the others close.

33.     Plaintiff is further likely to suffer irreparable injury if the six-month disqualification is not stayed pending trial in this matter since all claims will be moot, the Store will suffer substantial loss of its monthly revenue, and Plaintiffs will be unable to recover damages for lost sale. That the statute bars the court from awarding damages to Plaintiffs in the event it prevails compounds the concern of mootness. *Jefferson Vill. Enters. v. United States*, 2011 U.S. Dist. LEXIS 18225 (E.D. Michigan 2011).

34.     Plaintiffs have exhausted its administrative remedies, are entitled to a judicial trial *de novo* of the administrative action, and seeks reversal of the finding of a SNAP violation and the disqualification of the Store from SNAP participation.

## STATEMENT OF CLAIMS

### AS AND FOR A FIRST COUNT
**(For an Administrative Stay)**

35.     Plaintiff repeats, reiterates and realleges each and every allegation made in the foregoing paragraphs, as if fully set forth at length herein.

36.     In order to obtain a stay of enforcement in this type of matter, Plaintiffs must demonstrate (i) irreparable harm and (ii) a likelihood of success on the merits. 7 U.S.C. § 2023(17).

37.     Plaintiffs will suffer irreparable harm if forced to serve a permanent disqualification.

38.     Enforcement of the six-month period of disqualification from SNAP will wrongfully force Plaintiffs to sustain immediate and irreparable injury, loss and damage by directly depriving Plaintiffs of substantial portion of its gross revenues, as well as an unknown amount of additional revenue from by eligible SNAP participants who are drawn to the store by the availability of food bought with EBTs, and who almost invariably make simultaneous purchases of non-food products with cash or credit cards.

39.     Plaintiff are likely to suffer irreparable injury if the six-month disqualification is not stayed pending trial in this matter since all claims will be moot, the Store will suffer substantial loss of revenue and Plaintiff will be unable to recover damages for lost sale. That the statute bars the court from awarding damages to Plaintiff in the event it prevails compounds the concern of mootness. *Jefferson Vill. Enters. v. United States*, 2011 U.S. Dist. LEXIS 18225 (E.D. Michigan 2011).

40.     As such, Plaintiff will suffer irreparable harm.

41.     Plaintiff is also likely to succeed on the merits.

42.     FNS violated its own regulations, 7 C.F.R. § 278.6(d)(1)-(3), which imposes a mandatory requirement that the FNS Regional Office making a disqualification or penalty determination consider 1) the nature and scope of the violations, 2) any prior action taken by FNS to warn the retailer about the possibility violations are occurring, as well as 3) taking into account any other action by the Store demonstrating intent to violate SNAP regulations.

43.     The Agency never considered any prior action or lack thereof to warn Plaintiff about the possibly violative conduct, never warned Plaintiff, and incredibly, make absolutely no mention of warnings at all. Further, FNS never took into consideration any evidence on the part

of the Store evincing a propensity or lack thereof with respect to violating SNAP regulations, and stated that the intent of the Store is not to be considered when the Agency determines a penalty for a firm. Lastly, the Agency never once considered the nature and scope of the alleged violations, which are as alleged, the lowest possible level of infraction that could be alleged. These violations preclude FNS from imposing any penalty, including disqualification.

44.    The finding by the FNS at the administrative review level illegally attempts to avoid a clear violation of section 278.6(d)(1)-(3), including by completely failing to take into account any warning requirement and attempts to white-wash misconduct by both the FNS Regional Office.

45.    Additionally, FNS failed to make any findings as to the carelessness or lack of proper supervision on the part of Plaintiffs—a finding that is required in order to sustain the administrative penalty levied against Plaintiffs in the instant matter—pursuant to 7 CFR 278.6(e)(5). Defendant, instead, claims that because the violations occurred, it therefore had to be due to poor supervision and/or carelessness by the Store's ownership or management. Defendant provides absolutely no reasoning behind this.

46.    As such, since Plaintiffs will suffer irreparable harm and are likely to succeed on the merits, an administrative stay of the six-month disqualification is warranted.

## AS AND FOR A SECOND COUNT
### (For Judicial Review of the Order and Trial *de novo*)

47.    Plaintiffs repeat, reiterate and reallege each and every allegation made in the foregoing paragraphs, as if fully set forth at length herein.

48.    Under the laws governing the Act, a plaintiff is usually entitled to a trial *de novo*

by a court to "determine the validity of the questioned administrative action" as well as a trial *de novo* of whether the FNS followed the Act and regulations in finding a violation resulting from carelessness or poor supervision, whether the Department considered any prior warnings to the Store, and whether FNS decision to impose said penalty was arbitrary and capricious.

49.     FNS violated its own regulations, 7 C.F.R. § 278.6(d)(1)-(3), which imposes a mandatory requirement that the FNS Regional Office making a disqualification or penalty determination consider 1) the nature and scope of the violations, 2) any prior action taken by FNS to warn the retailer about the possibility violations are occurring, as well as 3) taking into account any other action by the Store demonstrating intent to violate SNAP regulations when the Agency wholly failed to consider said factors. In the instant matter, Defendant failed to consider factors 1-3, described *supra.*

50.     Moreover, FNS failed to make any findings as to the carelessness or lack of proper supervision on the part of Plaintiffs, as required by 7 C.F.R. § 278.6(e)(5), described *supra.*

51.     Pursuant to 7 U.S.C.. §§ 2023(13) and 2023(15), Plaintiff is entitled to a trial *de novo* on whether he violated a provision of the Act or a regulation under the Act, including trial *de novo* of whether the FNS followed the Act and regulations in finding the violation occurred as alleged.

52.     Additionally, Plaintiff respectfully requests that the court vacate the Final Agency Decision and immediately reinstate the Plaintiff as a SNAP participant, because Plaintiff did not violate SNAP laws or regulations because the allegedly improper EBT purchases of common household goods did not occur due to his carelessness or lack of supervision of his

employees, as required by 7 C.F.R. § 278.6(e)(5).

53.    FNS's action in disqualifying the plaintiff for six-months constitutes a misapplication of the Department's Secretary's interpretation of its regulations, published at 77 FR 48461.

54.    Plaintiff has been aggrieved by the determination of the USDA and aver that the Agency's findings are unsupported by reliable probative evidence and are otherwise the product of unlawful agency action.

55.    As such, the Order should be extinguished.

56.    Plaintiff respectfully requests that the court vacate the Final Agency Decision and immediately reinstate Plaintiffs as a SNAP participant.

57.    Alternatively, the Court should either: find no sanction appropriate, but direct issuance of a written warning; or reduce the disqualification to a reasonable civil money penalty.

58.    No prior relief sought herein has been requested.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court grant the following relief:

A.    A stay of the disqualification ordered by USDA pursuant to 7 U.S.C. §§ 2023(17); and

B.    *De novo* review of the Order and the subsequent extinguishment thereof; or

C.    Extinguishment of the Order as FNS has acted arbitrarily and capriciously and violated its own regulations in imposing a penalty of a six-months

disqualification without properly considering all statutory factors as set forth in 7 C.F.R. § 278.6(d)(1)-(3) and failing to make any findings as to 7 C.F.R. § 278.6(e)(5); and

D.   Finding that Plaintiff did not violate SNAP laws or regulations because the allegedly improper EBT purchases of common ineligible goods did not occur due to his carelessness or lack of supervision of his employees, as required by 7 C.F.R. § 278.6(e)(5).

E.   Order Defendants to reimburse Plaintiffs for all costs and fees associated with the commencement and prosecution of this lawsuit.

F.   Grant such further relief as this Court deems necessary and proper in the public interest.

G.   Alternatively, the Court should either:

   (i)   Find no sanction appropriate, but direct issuance of a written warning; or
   (ii)  Reduce the six-month disqualification to a reasonable civil money penalty.

Dated:   New York, NY
         February 26, 2025

                                                        SPODEK LAW GROUP, P.C.

                                                        _____
                                                        BY: Jeremy G. Feigenbaum, Esq.
                                                            *Attorney for Plaintiff*
                                                            233 Broadway, Suite 710
                                                            New York, NY 10279

(347) 292-8630
ED Missouri #5173620NY